Richard A. Illmer
**HUSCH BLACKWELL LLP**
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
t: 214.999.6100
f: 214.999.6170
Rick.Illmer@huschblackwell.com

Lynn Hamilton Butler
**HUSCH BLACKWELL LLP**
111 Congress Avenue, Suite 1400
Austin, Texas 78701
t: 512.479.9758
f: 512.226.7318
Lynn.Butler@huschblackwell.com

*Counsel for FirstBank & Trust f/k/a AimBank and Nonparty Heartland Financial USA, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE:  REAGOR-DYKES MOTORS, LP ET AL.,<br>     *Debtor.* | § § § § | Case No. 18-50214-RLJ-11<br>Chapter 11 |
| DENNIS FAULKNER, TRUSTEE OF REAGOR-DYKES AUTO GROUP CREDITORS LIQUIDATING TRUST,<br>     *Plaintiff,*<br>v.<br>AIMBANK,<br>     *Defendant.* | § § § § § § § § § § | Adversary Proc. No. 20-05039-RLJ |

**FIRSTBANK & TRUST F/K/A AIMBANK'S RESPONSE TO PLAINTIFF'S FIRST MOTION TO COMPEL**

TO THE HONORABLE JUDGE ROBERT L. JONES:

NOW COMES FirstBank & Trust f/k/a AimBank ("FirstBank") and files this its Response to Plaintiff's First Motion to Compel ("Motion", Dkt. 92) and in support of same would respectfully show the Court as follows:

**I.    SUMMARY**

1.    Plaintiff's Motion seeks two categories of documents: (1) kiting reports; and (2) deposited items. For approximately the last year, FirstBank and its parent company, Heartland

1

Financial USA, Inc. ("HTLF"), have exerted, and continue to exert, significant efforts to obtain these documents. While it has not been able to locate all of the items that Plaintiff seeks, it is not for lack of trying. FirstBank's and HTLF's search and collection efforts have been complicated both by multiple changes in relevant software and systems, as well as by the merger between AimBank and FirstBank and the resulting integration of the banks' systems. The current situation is further exacerbated by the fact that the changes in software and systems occurred at AimBank before the merger, with very little forensic information now available to FirstBank.

2. FirstBank's and HTLF's original search efforts were focused on FirstBank's and HTLF's files and data migrated from AimBank's pre-merger systems stored in file servers and shared drives. Given that HTLF's Infrastructure Team lacks deep institutional knowledge of AimBank's pre-merger systems and processes, and given the aforementioned lack of forensic information regarding pre-merger system changes, such search efforts were extraordinarily tedious. Nevertheless, HTLF's Infrastructure Team diligently performed the searches in an effort to find the items that Plaintiff seeks.

3. Recently, FirstBank and HTLF shifted the focus of their search efforts from these shared drives and file servers to third-party banking platforms—platforms to which the Infrastructure Team does not even have access. As a result, FirstBank has identified daily kite reports from March 9, 2018 forward,[1] which it is producing to Plaintiff concurrently with the filing of this Response. At the time of this filing, HTLF's Infrastructure Team continues to work diligently with an IT vendor to determine whether the pre-March 9, 2018 reports are accessible in any format. FirstBank has also identified the deposit items (again, on a third-party platform not

---

[1] It should be noted that one of the relevant pre-merger software platform changes occurred around March 2018. *See* Pl. First Mot. to Compel, Ex. 9, Dep. of Jeremy Ferrell, 22:25—23:6. ("Q: What kind of core system did AimBank have at the time that you signed on? … A: It was named Trenesis. Q: And how long did you use Trenesis as your core? A: Until March or April 2018.")

2

previously searched). FirstBank is processing those items for production to Plaintiff on an urgent basis.

## II. ARGUMENT

4. This is not a case of having the requested items but refusing to provide them, or of refusing to look for the documents. To the contrary, FirstBank and HTLF has been diligently searching to find the items that Plaintiff wants. But as one person described it, due to the changes in software and the FirstBank/AimBank merger, looking for specific reports was akin to looking for a needle in a field of 1,000 haystacks. Nevertheless, FirstBank and its parent company have continued to search for the needle; the timeline of these efforts is as follows:

### A. Spring/Summer 2021: Initial Collection Efforts

5. FirstBank and HTLF conducted the initial collection of documents potentially responsive to the Requests for Production served on FirstBank and the Subpoena served on HTLF. This process included searches of the folder of sight draft information and an imaging system called OnBase, where FirstBank located many of the documents requested by Plaintiff, such as Reagor-Dykes related tax returns, financial statements, etc. In addition, initial collection efforts included potentially responsive emails from HTLF's Outlook archive, including AimBank's e-mail archive dating back to 2017 that had been "ingested" into HTLF's system.[2] From the foregoing efforts, the only kite reports included in these documents were as follows:

- "Summary of Possible Kite Transactions" for RD Motors LP for the date range of February 1, 2018 through August 11, 2018 (HTLF0025200);

- "Summary of Possible Kite Transactions" for RD Snyder LP for the date range of April 1 2017 through April 4, 2018 (HTLF0034388); and

---

[2] Plaintiff does not take issue with HTLF's or FirstBank's production of email communications or Reagor-Dykes account documents (such as financial statements).

- "Kite Suspect Report – Daily Analysis" for the date July 3, 2018 (HTLF0027130).

These three items had been sent as attachments to emails.[3]

### B. September – October 2021: Continued Efforts By HTLF's Infrastructure Team

6. In an attempt to locate additional documents responsive to discovery requests, including kiting reports, HTLF's systems infrastructure team ("Infrastructure Team"), including Nicholas Elliott, an Infrastructure Manager, Justin Sauser, a Systems Engineer, and Ben Weaver, a former HTLF employee on the Infrastructure Team, searched HTLF's unstructured data, shared drives, and file directories, including the files migrated from AimBank. *See* Ex. C, Dec. of Justin Sauser ("Sauser Dec.") ¶ 4. With respect to the kite reports, the Infrastructure Team looked for documents akin to the kite reports that had been attached to e-mails referenced above.[4] *Id*. at ¶ 3. This search was tedious given that the Infrastructure Team had only a limited understanding of AimBank's pre-merger file system/structure, but the Infrastructure Team persisted with its searches. *Id*. at ¶ 5. Ultimately, no additional kite reports were found. *Id*.

### C. November 2021: Deposition of Debbie Smith

7. As noted in Plaintiff's Motion, Debbie Smith testified in her deposition that, following the merger between AimBank and FirstBank, she believed AimBank's pre-merger documents (including kite reports relating to Reagor-Dykes) were stored on a shared drive known as the "W: drive." *See* Ex. A, Dec. of Debbie Smith ("Smith Dec.") ¶ 3. Notably, Smith also testified in her deposition that *she had not actually looked since the merger* to see if in fact the kite reports were stored on the "W: drive". Pl. First Mot. to Compel, Ex. 8, Dep. of Debbie Smith,

---

[3] Further support that FirstBank has never been willfully withholding documents is the fact that it produced these three items months ago. It would make little sense to produce these items, particularly the comprehensive summaries, while withholding other documents such as daily reports.
[4] Weaver is no longer employed by HTLF.

149:5-11; *see also* Ex. A, Smith Dec. ¶ 4. After her deposition, Smith did look, and found that the kiting reports were not located on the "W: drive". Ex. A, Smith Dec. ¶ 5. She did not know where else the pre-merger Reagor-Dykes kite reports would be – or if they existed at all. *Id*. at ¶ 5.

    **D.**    **February 2022 – present: Focus on Third-Party Platforms**

    8.    In February of 2022, FirstBank expanded the number of personnel performing the searches and asked Tracy Bechen, the Business Systems Product Manager for HTLF, whether she had any insight into whether additional documents, such as kite reports and deposit items, existed and, if so, where. *See* Ex. B, Dec. of Tracy Bechen ("Bechen Dec."), ¶ 3. Unlike the Infrastructure Team, Bechen's background is specifically in deposit operations and mergers/acquisitions; thus, unlike the Infrastructure Team, she is familiar with the platforms and applications specific to those areas. *See* Ex. B, Bechen Dec. ¶ 2; Ex. C, Saucer Dec. ¶¶ 6-7.

    9.    When reviewing the "Kite Suspect Report – Daily Analysis," Bechen noticed the words "OPTICAL-Synergy" in the upper left-hand corner. Ex. B, Bechen Dec. ¶ 6; *see also* Ex. B-1, Redacted "Kite Suspect Report – Daily Analysis". Due to her extensive experience in bank operations, Bechen knew that "OPTICAL-Synergy" reports would not be stored in a shared drive or file server (where the Infrastructure Team had previously searched), but rather in a banking application called OmniView. *Id*. at ¶ 7.

    10.    The Infrastructure Team, which had previously conducted the searches in shared drives and file servers, does not have access to banking applications, such as Synergy and OmniView, and so did not search there. Ex. C, Saucer Dec. ¶ 6. Indeed, the Infrastructure Team would not have ascribed any special significance to the words "OPTICAL-Synergy" at all. *See id*. at ¶ 7.

    11.    Bechen was able to locate the "Kite Suspect Report – Daily Analysis" from March 9, 2018 through the present in OmniView. Ex. B, Bechen Dec. ¶ 8, but was not able to locate any

additional kite reports.[5] Due to Bechen's experience in banking operations and mergers/acquisition, she also knew that the deposited items would also be located in the third-party platform OmniView, *not* in file servers and shared drives where the Infrastructure Team had been looking. *See* Ex. B, Bechen Dec. ¶ 4; Ex. C, Saucer Dec. ¶ 4.

### E. Ongoing Efforts

12. FirstBank is working diligently to confirm whether reports from January 1, 2017 through March 2018 were ever ingested into Synergy and, if so, whether they are accessible in any format. Ex. C, Saucer Dec. ¶ 8. FirstBank has engaged an IT vendor, Blue Layer of Lubbock, Texas, to assist the Infrastructure Team with these ongoing efforts. *Id*.

13. With respect to the deposited items that it was able to locate, FirstBank is processing those for export on an urgent basis. FirstBank estimates it will take 60 hours of full-time employee hours to prepare deposit items to be exported from its platform to their counsel, who will then process and Bates-label the items for production to Plaintiff. FirstBank expects it will be able to complete this task and produce the items to Plaintiff on or before March 28, 2022.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant FirstBank & Trust f/k/a AimBank respectfully requests that the Court deny Plaintiff's First Motion to Compel and for such other and further relief to which it may be justly entitled.

Respectfully submitted,

*/s/ Richard A. Illmer*
Richard A. Illmer
State Bar No. 10388350
rick.illmer@huschblackwell.com

---

[5] Prior to approximately March of 2018, and well before the merger, AimBank used a third-party core system called Trenesis *See* Pl. First Mot. to Compel, Ex. 9, Dep. of Jeremy Ferrell, 22:25—23:6. Trenesis would have been the system that generated the equivalent report to the "Kite Suspect Report – Daily Analysis" at this time i.e. prior to the core system around March 2018. *See id*. at 229:3-24.

**HUSCH BLACKWELL LLP**
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 (*facsimile*)

Lynn Hamilton Butler
State Bar No. 03527350
lynn.butler@huschblackwell.com
**HUSCH BLACKWELL LLP**
111 Congress, Suite 1400
Austin, Texas 78701
(512) 479-9758
(512) 226-7318 (*facsimile*)

*COUNSEL FOR FIRSTBANK & TRUST F/K/A AIMBANK AND NONPARTY HEARTLAND FINANCIAL USA, INC.*

## CERTIFICATE OF SERVICE

I certify that on the 8th day of March, 2022, a true and correct copy of the foregoing Response was served by electronic mail by the Clerk of the Court via the ECM/ECF system to all parties of record.

*/s/ Richard A. Illmer*
Richard A. Illmer

HB: 4858-3007-7715.2